IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> LAMAR FIELDS, <br><br> *Defendant.* | CRIMINAL ACTION <br> NO. 17-0169 |

**PAPPERT, J.**                                                                                           October 9, 2018

**MEMORANDUM**

Lamar Fields is charged by indictment with eight counts of aiding and abetting the filing of materially false income tax returns in violation of 26 U.S.C. § 7206(2). Trial begins Monday, October 15. Fields and the Government have each filed three pretrial motions which the Court resolves in the accompanying Order as explained in this Memorandum.

The Court's July 25, 2018 Scheduling Order, (ECF No. 26), required pretrial motions to be filed on or before August 31, 2018, with responses due on or before September 10. On August 31, the Government filed motions to preclude improper cross examination, prohibit evidence of, or argument for, jury nullification and admit intrinsic evidence. (ECF Nos. 32–34.) On September 4, Fields sought an extension of time to file his pretrial motions, (ECF No. 35), which the Court granted after considering the Government's Response, (ECF No. 38), and holding a hearing, (ECF Nos. 49). An Amended Scheduling Order allowed Fields until September 21 to file his motions and gave him until September 28 to respond to those filed by the Government. (ECF No. 42.) On September 21, Fields filed motions to dismiss Counts 1 and 3 of the

1

Indictment based on the statute of limitations, to dismiss all counts due to vindictive prosecution and to suppress evidence. (ECF Nos. 43–45.) The Government filed its responses to Fields's motions on October 1. (ECF No. 47.) Fields never responded to the Government's three motions and while they could be granted as unopposed, the Court analyzes each on the merits.

A. The Government's Motions

1. ECF No. 32.

The Government first moves to preclude "improper cross-examination" of its witnesses. Specifically, it seeks to prevent Fields from reading aloud from interview reports written by DEA and IRS agents to impeach witnesses who did not author or adopt the reports.

The Motion is denied without prejudice. The Court will not make a broad ruling without seeing how these issues arise, if at all, at trial. Fields may only cross-examine government witnesses with interview reports and notes authored by other agents after laying the proper foundation and otherwise fully complying with applicable Federal Rules of Evidence. Failure to do so will result in an appropriate ruling from the Court.

2. ECF No. 33.

The Government moves to prohibit Fields from encouraging or arguing for jury nullification and from introducing evidence related to the penalties he would face if convicted.

The Court grants the Motion. First of all, neither the Court, counsel nor Fields may say or do anything which could encourage or lead any juror to disregard the law in

contradiction of the Court's instructions.  Second, as the Government points out, "the role of the jury in a non-capital case is to determine whether the defendant is guilty or not guilty based on the evidence and the applicable rules of law . . . without being influenced in any way by what the consequences of its verdict might be."  *United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993).  Evidence related to the penalties Fields might face if convicted is thus irrelevant under Federal Rule of Evidence 401 and inadmissible under Rule 402.

3. ECF No. 34.

The Government "seeks a pre-trial ruling that it may admit in its case-in-chief," evidence which it claims will show that Fields, as charged in the Indictment, aided and abetted the filing by others of materially false income tax returns.

The Motion seems premature and is denied without prejudice accordingly.  The Court is unclear as to how or why the proposed evidence described (W-2 forms, H&R Block debit cards and "other documents related to [Fields's] creation of fraudulent W-2 forms") would not be admissible as intrinsic to the charged crimes.  As described in the Government's Motion, this evidence would all seem to be "part and parcel" of the crimes charged, but there is no need for the Court to broadly rule on its admissibility until offered at trial.

B. Fields's Motions

1. ECF No. 43.

Fields moves to dismiss Counts 1 and 3 of the Indictment, arguing that the dates of illegal activity alleged in those counts are outside the statute of limitations for the charged offense.

3

26 U.S.C. § 6531(3) provides a six year statute of limitations for the prosecution of aiding and abetting the filing of materially false income tax returns under 26 U.S.C. § 7206(2). Counts 1 and 3 of the Indictment allege that Fields aided in the preparation of false tax returns filed by Aisha Patton and K.H. Fields contends that the returns which are the subject of those two counts were filed on March 7, 2011, more than six years before the grand jury returned the Indictment on March 30, 2017.

The Government's Response, (ECF No. 47), correctly notes that "a return filed before the due date is deemed filed on the due date" when calculating the statute of limitations for a violation of 26 U.S.C. § 7206. *United States v. Zudick*, 523 F.2d 848, 850 (3d Cir. 1975). In 2011, income tax returns were due on April 18. News Release, Internal Revenue Serv., IRS Kicks off 2011 Tax Season with Deadline Extended to April 18 (Jan. 4, 2011). Counts 1 and 3 were thus timely charged less than six years after the alleged illegal activity and the Court denies the Motion.

2. ECF No. 44.

Fields moves to dismiss all counts of the Indictment due to what he contends is vindictive prosecution. The Court heard argument on this Motion on October 5. (ECF No. 49.)

Fields has the burden to establish prosecutorial vindictiveness. *United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993). He may do so either by presenting evidence of retaliatory motive to prove actual vindictiveness or, "in certain circumstances . . . show[ing] facts sufficient to give rise to a presumption of vindictiveness." *Id.* Courts will only apply a presumption of vindictiveness where a

4

"reasonable likelihood of vindictiveness exists." *United States v. Esposito*, 968 F.2d 300, 303 (3d Cir. 1992); *United States v. Goodwin*, 457 U.S. 368, 373 (1982).

"The evil that a presumption of vindictiveness seeks to eradicate is the threat of retaliation when an accused exercises a right in the course of the prosecution." *Esposito*, 968 F.2d at 303. But where a prosecutor's decision to charge a defendant is "attributable to a legitimate reason," "seemingly retaliatory governmental conduct" is not prohibited. *Id.* at 305. ("[E]ven if a presumption applies, the government may rebut it by proffering legitimate, objective reasons for its conduct.") The Third Circuit Court of Appeals has held that a presumption of vindictiveness does not apply "to a subsequent criminal case where the basis for that case is justified by the evidence and does not put the defendant twice in jeopardy." *Id.* at 306.

Fields alleges that on October 27, 2015 in a separate case charging Fields with conspiracy to distribute and distribution of controlled substances and acquiring a controlled substance by fraud, *see United States v. Fields*, No. 2:15-CR-00129-JHS (E.D. Pa. filed Apr. 1, 2015), he offered evidence to support his motion to dismiss the indictment. The evidence was a police report from the search of his motel room on March 29, 2013. (Tr. Oral Arg. 7:3–6.) He alleges that after the hearing, the prosecutor "remove[d] herself" from the case and "decided to pursue a new indictment against the defendant based off the [police report]." (Def.'s Mot. Dismiss, ECF No. 44, at 3.) He claims she acted "with a deep-seated resentment and hostility of [sic] the defendant asserting his right (statutory right) to file pre-trial motions." (*Id.*)

In his motion papers and at oral argument, Fields makes several assumptions: that the prosecutor removed herself from his drug case to pursue new charges against

5

him, (Tr. Oral Arg. 12:10–15); that the prosecutor lied about her obligations in other cases when she removed herself from the drug case because she "found time to go outside her prosecutorial duties and start a new investigation," (Def.'s Mot. Dismiss 4; Tr. Oral Arg. 12:24–25, 13:1–3); that the Government did not know about the police report of the motel room search before Fields offered it as evidence in his drug case, (Tr. Oral Arg. 8:25, 9:1–9) and that the prosecutor "decided on her own to re-ignite the [tax fraud] investigation" after that investigation had "ceased," (Def.'s Mot. Dismiss 3). Fields's support for these assumptions is his "inference . . . from the facts" and his "experience . . . dealing with the law, and [the Government's] intentions, and the strategic ways they do [sic] handle their cases." (*Id.* at 11:20–22; 13:22.)

Fields offers no evidence, other than his unfounded assumptions, that the prosecutor retaliated against him for filing a pretrial motion to dismiss the indictment in his drug case. *See Goodwin*, 457 U.S. at 381 ("[I]t is 'unrealistic to assume that a prosecutor's probable response to [pretrial] motions is to seek to penalize and to deter.'") At oral argument, the Government stated that its tax fraud investigation began in 2014 and it had evidence to support the investigation "[a]bout a year" before Fields's motion to dismiss the drug case. (Tr. Oral Arg. 22:4–8, 26:1–10.) According to the prosecutor, the investigation was "ongoing" and took "some years to put everything together" before the indictment in 2017. (*Id.* at 25:19–21.)

There is no basis for any finding that a "reasonable likelihood of vindictiveness exists" and thus no basis for a presumption of vindictiveness. Yet even if a presumption of vindictiveness could somehow apply, the Government presented

6

legitimate, objective reasons for charging Fields with tax fraud after his pretrial motion in the drug case, and nothing about the prosecution puts Fields "twice in jeopardy."

   3. ECF No. 45.

Fields moves to suppress all evidence seized from a rental car after a traffic stop on March 29, 2013 along with evidence discovered in his motel room during the execution of a search warrant later that day. The Court heard argument on this Motion on October 5. (ECF No. 49.)

Fields unsuccessfully moved to suppress the same evidence in his drug case. *See United States v. Fields*, No. 2:15-CR-00129-JHS, (E.D. Pa. filed Apr. 1, 2015) (Slomsky, J.), ECF Nos. 255–56. His new Motion rests on two grounds: first, that the Supreme Court's recent decision in *Byrd v. United States*, 138 S. Ct. 1518 (2018), requires the court to revisit the denial of the motion in the drug case, and second, that his consent to search the motel room was void because the officers "continually retained his identification." (Def.'s Mot. Suppress 4.) The Court addresses Fields's arguments in turn.

*Byrd v. United States*, decided May 14, 2018, resolved a circuit split as to whether a driver has a legitimate expectation of privacy in a rental car where his or her name is not listed on the rental agreement. On the date of the search in this case, March 29, 2013, Third Circuit Court of Appeals precedent was clear: "any expectation of privacy [an unauthorized driver] subjectively h[olds] in the vehicle [is] objectively unreasonable . . . [and the driver] lacks standing to contest the search of the rental vehicle." *United States v. Kennedy*, 638 F.3d 159, 168 (3d Cir. 2011); *see also Byrd*, 138 S. Ct. at 1526 (noting the conflict among the Third, Fourth, Fifth, Sixth, Eighth, Ninth

7

and Tenth Circuit Courts of Appeals on this issue). *Byrd* held "that the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." *Byrd*, 138 S. Ct. at 1531.

In the absence of an exception to the exclusionary rule, the Government may not rely at trial on evidence obtained in violation of the defendant's Fourth Amendment rights. *United States v. Franz*, 772 F.3d 134, 145 (3d Cir. 2014). But because the exclusionary rule "comes at the cost of hiding often crucial evidence from a fact-finder," the Supreme Court has held that "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system" to trigger it. *Id.*; *Herring v. United States*, 555 U.S. 135, 144 (2009). The Supreme Court held in *Davis v. United States* that the exclusionary rule does not apply where a search is "conducted in objectively reasonable reliance on binding appellate precedent." 564 U.S. 229, 231 ("[S]uppression would do nothing to deter police misconduct in these circumstances, and . . . it would come at a high cost to both the truth and the public safety.") "The deterrent effect of exclusion in such a case can only be to discourage the officer from 'doing his duty.'" *Davis*, 564 U.S. at 241 (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)).

As no facts have changed regarding the search of the car and motel room, Fields is essentially appealing the denial of his motion in the drug case. *Byrd* does not permit Fields to do so; the officers who conducted the search relied in good faith on then-binding Third Circuit Court of Appeals precedent, so their conduct does not trigger the exclusionary rule.

Fields argues that the Government waived its right to argue good faith reliance on Third Circuit precedent because the Government did not make this argument to Judge Slomsky in the drug case and the officers did not specifically testify that they relied on *Kennedy* at the prior suppression hearing.  However, the officers testified at that hearing that they "decided to seize the vehicle because [Fields] was an unauthorized user" of the rental car, and Judge Slomsky specifically found that the officers "seized the car because Defendant was an unauthorized driver of the vehicle." *Fields*, No. 2:15-CR-00129-JHS, ECF No. 47-1 at 23:18–20, 25:11–13; ECF No. 255 at 4.  The Government had no occasion to explicitly argue good faith reliance on *United States v. Kennedy* at that time because the Supreme Court had not yet abrogated *Kennedy*.  The Government now timely raises its good faith reliance argument.

At oral argument, Fields argued that the good faith exception to the exclusionary rule cannot apply in this case because *Byrd* invited the appellate court to consider, on remand, whether the officers in that case had probable cause for the search.  When the Supreme Court vacated the appellate court's denial of the motion to suppress evidence in *Byrd*, it left open the Government's arguments on appeal, including whether "probable cause justified the search in any event." *Byrd*, 138 S. Ct. at 1531.  The Court remanded for proceedings in accordance with its opinion.  On remand, the Third Circuit Court of Appeals affirmed the denial of the defendant's motion to suppress "on the alternative ground that, because the search . . . was authorized by our own precedent [*Kennedy*] at the time it was conducted, the good-faith exception to the exclusionary rule applies." *United States v. Byrd*, No. 16-1509, 2018 WL 3750932, at *1 (3d Cir. Aug.

8, 2018) (non-precedential). *Byrd* did not abrogate *Davis*, and the officers' reasonable reliance on *Kennedy* in this case is no different than in *Byrd*.

Fields also argues that his consent to the search of his motel room was void because the officers "continually retained his identification." (Def.'s Mot. Suppress 4.) Fields relies on *Florida v. Royer*, 460 U.S. 491 (1983), to support his position. In *Royer*, plain-clothes detectives asked for the defendant's airplane ticket and driver's license when they suspected him of carrying drugs in an airport. The detectives brought the defendant to a small room where they asked for his consent to search his suitcases. In holding that the defendant's consent was invalid, the Supreme Court found that the officers were permitted to take and examine the defendant's ticket and license, but the circumstances of the case "surely amount[ed] to a show of official authority such that 'a reasonable person would have believed he was not free to leave.'" *Id.* at 502 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Here, the officers asked for Fields's driver's license during a routine traffic stop. The name on the license was "Lamar Cooper"; at oral argument, Fields admitted that the license "wasn't [his]." (Tr. Oral Arg. 47:21–23.) Fields gave his written consent to the search of his motel room later that day, after he voluntarily accompanied the officers to a police station.[1] Fields did not allege in his motion papers or at oral argument any facts—beyond the officers' examination of another man's license—that would lead a reasonable person to believe Fields's consent to the search his motel room was invalid. Accordingly, the Court denies the motion.

---

[1] In Fields's drug case, Judge Slomsky also considered whether Fields's consent to search the motel room was valid. *Fields*, No. 2:15-CR-00129-JHS, ECF No. 255 at 15–17. After hearing oral argument on Fields's motion to suppress the same evidence, Judge Slomsky found that Fields was not unlawfully detained at the time he gave consent. *Id.*

10

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.